IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Matthew A. Cohen, ) | Civil Action No. 2:14-01775-RMG-MGB |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Carolyn W. Colvin, Acting ) | **OF MAGISTRATE JUDGE** |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This case is before the Court for a Report and Recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The Plaintiff, Matthew A. Cohen, brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security Administration regarding his claim for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act.

## **RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS**

Plaintiff was 51 years old on his amended alleged disability onset date of August 1, 2010. (R. at 15, 21.)[2] He alleged disability due to coronary artery disease, diabetes, and kidney disease. (R. at 17.) Plaintiff has at least a high school education and past relevant work as a custodian and machine operator. (R. at 21.)

Plaintiff protectively filed an application for DIB and SSI on September 4, 2010. (R. at 15.) His applications were denied initially and on reconsideration. (R. at 15.) After a hearing before an Administrative Law Judge (ALJ) on November 1, 2012, the ALJ issued a decision on December 3,

---

[1] A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

[2] Plaintiff originally alleged his disability onset date was December 30, 2008; at the hearing, he amended his alleged onset date to August 1, 2010. (R. at 15.)

2012, in which the ALJ found that Plaintiff was not disabled. (R. at 15-23.) The Appeals Council denied Plaintiff's request for review (R. at 1-3), making the ALJ's decision the Commissioner's final decision for purposes of judicial review.

In making the determination that the Plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

> (1) The claimant meets the insured status requirements of the Social Security Act through March 31, 2014.
>
> (2) The claimant has not engaged in substantial gainful activity since August 1, 2010, the amended alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> (3) The claimant has the following severe impairments: coronary artery disease, status post bypass surgery, diabetes mellitus, and kidney disease (20 CFR 404.1520(c) and 416.920(c)).
>
> (4) The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> (5) After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). Specifically, the claimant is able to lift and carry up to 20 pounds occasionally and 10 pounds frequently and stand, walk, and sit for 6 hours in an 8-hour day except that the claimant can never balance. He should have no exposure to temperature extremes, high humidity, pulmonary irritants, unprotected heights, or dangerous machinery. He is limited to simple repetitive tasks requiring no good far visual acuity.
>
> (6) The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).
>
> (7) The claimant was born on October 1, 1958 and was 51 years old, which is defined as an individual closely approaching advanced age, on the amended alleged disability onset date (20 CFR 404.1563 and 416.963).
>
> (8) The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

> (9) Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).
>
> (10) Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).
>
> (11) The claimant has not been under a disability, as defined in the Social Security Act, from August 1, 2010, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

## **APPLICABLE LAW**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). The Act also provides that supplemental security income (SSI) disability benefits shall be available for aged, blind, or disabled persons who have income and resources below a specific amount. See 42 U.S.C. § 1381 *et seq*. "Disability" is defined in the Act as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than" twelve months. See 42 U.S.C. § 423(d)(1)(A) (definition used in the DIB context); 42 U.S.C. § 1382c(a)(3)(A) (definition used in the SSI context).[3]

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Administration's official Listing of Impairments found at 20 C.F.R. Part 4, Subpart P, Appendix 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. See 20 C.F.R. § 404.1520 (DIB context); 20 C.F.R. § 416.920 (SSI

---

[3] "[T]he definition of disability is the same under both DIB and SSI . . . ." Mason v. Colvin, Civ. A. No. 9:12-1157-TLW-BM, 2013 WL 4042188, at *2 n.2 (citing Emberlin v. Astrue, Civ. A. No. 06-4136, 2008 WL 565185, at *1 n.3 (D.S.D. Feb. 29, 2008)).

context). If an individual is found not disabled at any step, further inquiry is unnecessary. See 20 C.F.R. § 404.1520(a)(4) (DIB context); 20 C.F.R. § 416.920(a)(4) (SSI context); see also Hall v. Harris, 658 F.2d 260 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. See SSR 82-62, 1982 WL 31386, at *3. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5); 42 U.S.C. § 1382c(a)(3)(H)(i). He must make a prima facie showing of disability by showing that he is unable to return to his past relevant work. Grant v. Schweiker, 699 F.2d 189, 191 (4th Cir. 1983); see also Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. See Grant, 699 F.2d at 191. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. See id. at 191-92.

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner "are supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Richardson v. Perales, 402 U.S. 389 (1971); 42 U.S.C. § 405(g); 42 U.S.C. § 1383(c)(3). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. Pyles v. Bowen, 849 F.2d 846, 848 (4th Cir. 1988) (citing 42 U.S.C. § 405(g); Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "substantial evidence" is defined as:

> such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Substantial evidence consists of more than a mere scintilla of evidence but may be less than a preponderance.

Smith v. Chater, 99 F.3d 635, 637-38 (4th Cir. 1996) (internal quotation marks and citations omitted).

Thus, it is the duty of this Court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that his conclusion is rational. Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

## **DISCUSSION**

The Plaintiff contends that the ALJ erred in failing to find him disabled. Specifically, Plaintiff contends the ALJ "erred in according the opinion of Dr. Hamilton, Mr. Cohen's treating nephrologist, 'little weight' as the ALJ's stated reasons for doing so are deficient." (Dkt. No. 17 at 12.) Plaintiff asserts that his case should be remanded for an award of benefits because "properly crediting Dr. Hamilton's opinion that Mr. Cohen is limited to sedentary work," Grid Rule 201.1.10 directs a finding of disability. (Id. at 22.) Plaintiff also contends the ALJ erred in evaluating his credibility and in posing an incomplete hypothetical to the Vocational Expert ("VE"). (Id. at 23-29.)

### **I.     Rejection of Dr. Hamilton's Opinion**

In August of 2010, Plaintiff was admitted to Roper St. Francis Hospital and diagnosed with, *inter alia*, acute anteroseptal myocardial infarction, coronary artery disease, and renal insufficiency with acute tubular necrosis. (See R. at 402.) He underwent a three-vessel coronary artery bypass on August 4, 2010. (R. at 403.) The records reveal that Dr. Hamilton, a nephrologist, was consulted during Plaintiff's hospitalization due to Plaintiff's rental insufficiency. (See R. at 403; see also R. at 530-31.) Following his hospitalization, Dr. Hamilton treated Plaintiff, and the record contains documentation of that treatment from October of 2010 through August of 2012. (See R. at 520-39, 593-607.) In a letter dated October 25, 2012, Dr. Hamilton stated,

> I have been providing care to Mr. Matthew Cohn [sic] since October of 2010. He has several medical diagnosis [sic] including coronary artery disease, chronic kidney disease[,] hypertension and a history of CABG. The patient's kidney disease is stable but progressive and results in fluid retention and anemia that causes fatigue, decreased energy and concentration difficulties. We do not expect any improvement in his rental function and actually there is a strong chan[c]e it will worsen over time to the point he may need dialysis in the future. His sustainable activity since I have

> been following him is at a sedentary level, and this is a direct result of the symptoms
> and complications of his medical conditions.

(R. at 616.) Attached to that letter was the definition of exertional categories for residual functional capacity. (See R. at 617.)[4]

The ALJ, however, concluded that Plaintiff had the residual functional capacity to perform a limited range of light work. (See R. at 18.) In so concluding, the ALJ stated, *inter alia*,

> The undersigned has considered, but given little weight to, Dr. Brent Hamilton's October 2012 medical source statement regarding his treatment of the claimant. (Exhibit 21F). Dr. Hamilton indicates that the claimant's diagnoses cause fatigue, decreased energy, and concentration difficulties. The undersigned notes that these symptoms cause non-exertional rather than exertional limitations and, as such, Dr. Hamilton's opinion that the claimant is limited to sedentary work is unjustified. The undersigned notes that this opinion is unsupported by Dr. Hamilton's own treatment notes for the claimant, which do not evidence functional limitations and show that the claimant's condition is, in fact, stable. It appears that Dr. Hamilton prepared this report as an accommodation to the claimant based on his subjective complaints.

(R. at 20.)[5]

Plaintiff contends the ALJ's reasons for rejecting Dr. Hamilton's opinions "are neither valid nor sufficient." (Dkt. No. 17 at 14.) Plaintiff first states, "The fact that Dr. Hamilton has identified

---

[4]"Sedentary" was defined as follows:
> Sitting for 6 hours out of 8-hour day; stand and/or walk 2 hours out of 8-hour day; occasionally lift/carry up to 10 pounds; frequently lift/carry small articles less than 10 pounds[.]

(R. at 617.) "Light" was defined as follows:
> Standing/walking for 6 hours out of 8-hour day; sit off and on for 2 hours out of 8-hour day; occasionally lift/carry up to 20 pounds; frequently lift/carry up to 10 pounds.

(Id.)

[5]The regulations define "sedentary work" and "light work" as follows:
> (a) Sedentary work. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.
> (b) Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567; 20 C.F.R. § 416.967.

nonexertional limitations–fatigue, decreased energy, and concentration difficulties–does not render his opinion that [Plaintiff] is limited to sedentary work 'unjustified' as the ALJ claimed." (Id. at 15.) Plaintiff also contends that the ALJ's "finding that Dr. Hamilton's opinion is not supported by the treatment notes–primarily because his condition was 'stable' is simply not a proper basis to reject his opinion." (Id. at 16.) Finally, Plaintiff asserts "[t]he fact that Dr. Hamilton did not include specific functional limitations in his progress notes is also not a proper basis to reject his opinion." (Id. at 20.)

Under the regulations of the Social Security Administration, the Commissioner is obligated to consider all medical evidence and the opinions of medical sources, including treating physicians. 20 C.F.R. § 404.1545; 20 C.F.R. § 416.945; see also 20 C.F.R. § 404.1527; 20 C.F.R. § 416.927. The regulation, known as the "Treating Physician Rule," imposes a duty on the Commissioner to "evaluate every medical opinion we receive." 20 C.F.R. § 404.1527(c); 20 C.F.R. § 416.927(c). Special consideration is to be given to the opinions of treating physicians of the claimant, based on the view that "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(c)(2); 20 C.F.R. § 416.927(c)(2). Under some circumstances, the opinions of the treating physicians are to be accorded controlling weight. Even where the opinions of the treating physicians of the claimant are not accorded controlling weight, the Commissioner is obligated to weigh those opinions in light of a broad range of factors, including the examining relationship, the nature and extent of the treatment relationship, supportability of the opinions in the medical record, consistency, and whether the treating physician was a specialist. 20 C.F.R. § 404.1527(c)(1)-(5); 20 C.F.R. § 416.927(c)(1)-(5). The Commissioner is obligated to weigh the findings and opinions of treating physicians and to give "good reasons" in the written decision for the weight given to a treating source's opinions. SSR 96-2P, 1996 WL 374188, at *5; see also 20 CFR § 404.1527(c)(2); 20 C.F.R. § 416.927(c)(2).

As noted above, Plaintiff contends the ALJ erred in rejecting Dr. Hamilton's opinion because the symptoms Dr. Hamilton identified were "non-exertional rather than exertional limitations." (See R. at 20; see also Dkt. No. 17 at 15.) Plaintiff states, "The fact that Dr. Hamilton has identified nonexertional limitations–fatigue, decreased energy, and concentration difficulties–does not render his opinion that [Plaintiff] is limited to sedentary work 'unjustified' as the ALJ claimed." (Dkt. No. 17 at 15.)

The undersigned agrees with Plaintiff. The fact that the symptoms identified by Dr. Hamilton–fatigue, decreased energy, and concentration difficulties–are non-exertional is not a "good reason" to reject his opinions. Residual Functional Capacity is "the most [a claimant] can still do despite [his or her] limitations. 20 C.F.R. § 404.1545(a)(1); 20 C.F.R. § 416.945(a)(1). Social Security Ruling 96-8p provides further guidance in assessing Residual Functional Capacity; that ruling states,

> Ordinarily, RFC is the individual's *maximum* remaining ability to do sustained work activities in an ordinary work setting on a **regular and continuing basis**, and the RFC assessment must include a discussion of the individual's abilities on that basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. RFC does not represent the *least* an individual can do despite his or her limitations or restrictions, but the *most*.

SSR 96-8p, 1996 WL 374184, at *2 (emphases in original)). The ALJ concluded that Plaintiff's kidney disease was a severe impairment. (See R. at 17.) The fact that Dr. Hamilton–a nephrologist–identified non-exertional limitations in his letter is hardly surprising,[6] and, in any event, "[n]onexertional impairments may or may not affect a person's capacity to carry out the primary

---

[6]As noted in Lewis v. Colvin, Civ. A. No. 1:13-cv-3445 DCN, 2014 WL 6908900 (D.S.C. Dec. 8, 2014),
> Symptoms of chronic kidney disease are generally mild in the early stages and may include appetite loss, general ill feeling and **fatigue**, headaches, itching and dry skin, nausea, and unintended weight loss. Symptoms that appear in conjunction with significantly reduced kidney function include abnormally dark or light skin, bone pain, drowsiness or **problems concentrating** or thinking, numbness or swelling in the hands and feet, muscle twitching or cramps, breath odor, easy bruising or blood in the stool, excessive thirst, frequent hiccups, problems with sexual function, **shortness of breath**, sleep disturbance, and vomiting. . . . **Anemia** is one of many possible complications of chronic kidney disease.

Lewis, 2014 WL 6908900, at *12 (citations omitted) (emphasis added).

8

strength requirements of jobs, and they may or may not significantly narrow the range of work a person can do." SSR 85-15, 1985 WL 56857, at *2; cf. SSR 96-8p, at *3 ("[I]n order for an individual to do a full range of work at a given exertional level, such as sedentary, the individual must be able to perform substantially all of the exertional and nonexertional functions required in work at that level."); SSR 96-8p, at *6 ("[E]ven though mental impairments usually affect nonexertional functions, they may also limit exertional capacity by affecting one or more of the seven strength demands. For example, a mental impairment may cause fatigue . . . ."). Accordingly, the ALJ erred in discounting Dr. Hamilton's opinion because the symptoms Dr. Hamilton identified were non-exertional.

  In concluding Dr. Hamilton's opinion was entitled to "little weight," the ALJ also noted that Hamilton's opinion was "unsupported by [his] own treatment notes for the [Plaintiff], which do not evidence functional limitations and show that the [Plaintiff's] condition is, in fact, stable." (R. at 20.) As noted above, in concluding Plaintiff's "sustainable activity" since October of 2010 was "at a sedentary level," Dr. Hamilton noted Plaintiff's "stable but progressive" kidney disease that "results in fluid retention and anemia that causes fatigue, decreased energy and concentration difficulties." (R. at 616.) While the medical records in this case do indicate some stability to Plaintiff's kidney disease, they also–as Dr. Hamilton indicated–point to its progressiveness. (See, e.g., R. at 535, 538.) Plaintiff's laboratory reports reveal that, although there is some minor fluctuation in the numbers, Plaintiff's Glomerular Filter Rate ("GFR") is on a downward trend. For example, Plaintiff's GFR was 43 on August 15, 2010; 45 on December 2, 2010; 41 on December 7, 2011; 35 on January 24, 2012; and 34 on August 28, 2012. (See R. at 528, 491, 604, 582, 599.)[7] In addition, Plaintiff's level of creatinine is consistently high. (See, e.g., R. at 491, 520-21, 601, 599.)[8] In any event, the fact that

---

[7]The records indicate that "[a]verage GFR based on [Plaintiff's] age group [is] 93 ml/min." (See, e.g. R. at 491.)

[8]The undersigned notes that Dr. Hamilton's opinion is consistent with Plaintiff's testimony at the hearing. Plaintiff testified, *inter alia*, "[I]f I go and do anything, you–it, it causes me to get tired real fast." (R. at 35-36.) He testified that if he stands "too long," or in excess of about twenty minutes, he starts to feel dizzy. (R. at 37.) He stated that he rides a stationery bicycle for about five minutes per day, "which is hard sometimes," and that he does not ride it for longer than

(continued...)

Plaintiff's condition may be stable does not mean that it cannot also be disabling. See Hemminger v. Astrue, 590 F. Supp. 2d 1073, 1081 (W.D. Wis. 2008) ("[T]he fact that other physicians who examined or treated plaintiff . . . used the word 'stable' to describe her fibroymyalgia says nothing about whether plaintiff can work: a person can have a condition that is both 'stable' and disabling at the same time." (citing Bauer v. Astrue, 532 F.3d 606, 609 (7th Cir. 2008)); Moreles v. Apfel, 225 F.3d 310, 319 (3d Cir. 2000) ("Dr. Erro's observations that Morales is 'stable and well controlled with medication' during treatment does not support the medical conclusion that Morales can return to work. Dr. Erro, despite his notation, opined that Morales's mental impairment rendered him markedly limited in a number of relevant work-related activities.").

In this case, the ALJ gave "little weight" to Dr. Hamilton's opinion, but as detailed above, that analysis contains errors. Dr. Hamilton is a specialist; he has treated Plaintiff for his kidney disease over the course of at least two years; and that kidney disease is well documented in the laboratory reports in the record. Based on the foregoing, it does not appear that the ALJ analyzed Dr. Hamilton's opinion pursuant to the standards of the Treating Physician Rule. See, e.g., Wall v. Colvin, Civ. A. No. 8:12-3152-RMG, 2014 WL 517461, at *6 (D.S.C. Feb. 7, 2014) (the ALJ's "evaluation of the expert opinions . . . falls far short of the clearly established standards of the Treating Physician Rule" where, *inter alia*, "the opinions of Dr. Netherton, Plaintiff's long-serving treating-specialist physician, were largely dismissed without reference to the standards of the Treating Physician Rule," and "[n]o weight was noted to be given for Dr. Netherton's treating relationship or the fact that he is a pain specialist"). Accordingly, on this record, the undersigned is unable to conclude the Commissioner's determination is supported by substantial evidence.

---

[8](...continued)
that because he gets tired. (R. at 39-41.) Plaintiff testified that he was able to walk for about ten to fifteen minutes before he would have to stop and rest. (R. at 43.) He stated he did not think he could be on his feet for more than two hours but that he could walk half of a mile. (R. at 44-45.)

**II.     Remaining Claims of Error**

Plaintiff asserts other errors in the instant case. For example, Plaintiff asserts that the court should remand for an award of benefits because "[p]roperly crediting Dr. Hamilton's opinion that Mr. Cohen is limited to sedentary work," Grid Rule 201.1.10 "directs a finding of disability." (Dkt. No. 17 at 1.) Although the undersigned finds reversible error with respect to the ALJ's analysis of Dr. Hamilton's opinion, remand for an award of benefits is not proper in this case, given that the record contains evidence conflicting with that opinion. See, e.g., Radford v. Colvin, 734 F.3d 288, 294-96 (4th Cir. 2013) (stating, where the record contained conflicting evidence as to whether the plaintiff satisfied a listing, "Although we hold that the district court did not apply the wrong legal standard, we nonetheless vacate its judgment because it chose the wrong remedy: Rather than 'reversing' the ALJ and remanding with instructions to award benefits to Radford, the district court should have vacated and remanded with instructions for the ALJ to clarify why Radford did not satisfy Listing 1.04A.").

Plaintiff also argues the ALJ erred in evaluating Plaintiff's credibility and in failing to pose a complete hypothetical to the VE. (See Dkt. No. 17 at 1.) Although Plaintiff's arguments are somewhat related to his argument that the ALJ erred in rejecting Dr. Hamilton's opinion, the argument concerning Plaintiff's credibility warrants mention. The ALJ stated, *inter alia*,

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of his alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not fully credible to the extent they are inconsistent with the above residual functional capacity assessment. The medical evidence of record indicates that the claimant's impairments could be expected to cause some of the symptoms alleged by the claimant but not to the degree of severity alleged. The claimant told a consultative examiner and reiterated at the hearing that he can walk half a mile, which is consistent with the ability to stand/walk sufficiently to perform a reduced range of light work. The undersigned notes also that the claimant rides a stationery cycle daily and spends time daily on a computer.

(R. at 19-20.)

Respectfully, Plaintiff's ability to walk one half of a mile, or for ten to fifteen minutes, and ride a stationery bicycle for five minutes per day, does not support a finding that Plaintiff is able to

11

"stand[] or walk[], off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251, at *6; see also SSR 96-8p, 1996 WL 374184, at *2 ("Ordinarily, RFC is the individual's *maximum* remaining ability to do sustained work activities in an ordinary work setting on a **regular and continuing basis**, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." (underlining added)).

As ser forth above, the undersigned finds that the ALJ's analysis of Dr. Hamilton's opinion is a sufficient basis to remand the case to the Commissioner. Plaintiff's other allegations of error pertain to the ALJ's rejection of Dr. Hamilton's opinion, so upon remand, the Commissioner should take into consideration Plaintiff's remaining allegations of error.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that the Commissioner's decision be reversed and remanded for administrative action consistent with this recommendation, pursuant to sentence four of 42 U.S.C. Section 405(g) for further proceedings as set forth above.

IT IS SO RECOMMENDED.

_____
MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

July 2, 2015
Charleston, South Carolina